UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELDON BURROWS, | 1:04-cv-06165-AWI-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AND JUDGMENT BE ENTERED (Doc. 51.) |
| v. | |
| J. NEUBARTH and R. S. ORTIZ, | |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Eldon Burrows ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**I.    RELEVANT PROCEDURAL HISTORY**

Plaintiff filed this action on August 26, 2004. (Doc. 1.) This action now proceeds on plaintiff's second amended complaint, filed April 4, 2006, against defendants J. Neubarth, M.D., and R. S. Ortiz, M.D. ("defendants"), for acting with deliberate indifference to plaintiff's medical needs, in violation of the Eighth Amendment.[1]  (Doc. 33.) On May 12, 2008, defendants filed a motion for summary judgment. (Doc. 51.) On July 31, 2008, plaintiff filed an opposition.[2] (Doc. 55.)

---

[1] The original complaint and the first amended complaint named J. Klarich, M. L. Bendon, N. Kushner, J. Neubarth, and R.S. Ortiz as defendants. (Docs. 1, 27.) The second amended complaint omitted defendants Bendon and Kushner. (Doc. 33.) On December 15, 2008, defendant Klarich was dismissed by the court due to evidence of his death. (Doc. 59.)

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on May 11, 2004. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 10.)

1

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

///
///
///
///
///

3

III. **UNDISPUTED FACTS**[3]

1. Plaintiff is a state prisoner who was incarcerated at Pleasant Valley State Prison ("PVSP") suffering from diabetes, hypertension, and poor kidney function when the events at issue occurred.

2. Defendants are both licensed medical doctors who at all relevant times were working for the California Department of Corrections & Rehabilitation.

3. On December 12, 2002, plaintiff submitted an Inmate/Parolee Appeals Request seeking to be placed on the National Organ Donor List for a kidney transplant, and to have blood testing for comparison with possible family members.

4. Dr. Neubarth examined plaintiff on January 13, 2003, concerning his history of hypertension, diabetes, and renal failure. Plaintiff explained he had a nephrology consult in November 2002, and was told that his kidneys were functioning at 35 percent, and that he would need dialysis within one year. Dr. Neubarth prescribed insulin, ordered lab tests, and requested an ophthalmology consult.

5. Based on the lab reports, Dr. Neubarth determined that plaintiff's kidneys were functioning adequately. Plaintiff did not receive dialysis treatment and was not recommended for such treatment.

6. After interviewing plaintiff on January 15, 2003, Dr. Neubarth denied plaintiff's 602 appeal request on February 19, 2003, at the first level of review based on the determination that plaintiff's latest tests indicated his kidneys were functioning adequately, and he did not meet the criteria for a kidney transplant at that time.

7. After denial at the first level of review, on July 22, 2003, Dr. Ortiz again denied plaintiff's ongoing appeal request to be put on the National Organ Donor List and "cross type" with a willing family donor based on his review of plaintiff's medical history.

IV. **DISCUSSION**

A. **Plaintiff's Allegations**

In the second amended complaint, plaintiff alleges that defendants failed to provide him with adequate medical care when they denied his requests for a kidney transplant, knowing that he suffered from renal failure and other related symptoms, causing his health to deteriorate. The

---

[3]On July 31, 2008, plaintiff filed an opposition to the motion for summary judgment, requesting that his filed complaint be used to oppose the motion for summary judgment. (Doc. 55.) Plaintiff did not submit a statement of undisputed facts. Nor did plaintiff admit or deny any of the specific facts set forth by defendants as undisputed. See Local Rule 56-260(b). Therefore, the court has compiled the summary of undisputed facts from defendants' statement of undisputed facts and plaintiff's verified complaint. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e). Because plaintiff neither submitted his own statement of undisputed facts nor addressed specific facts in defendants' statement of undisputed facts, the court accepts defendants' version of the undisputed facts where plaintiff's verified complaint is not contradictory.

4

events at issue occurred while plaintiff was an inmate incarcerated at PVSP.  Plaintiff makes the following allegations:

Plaintiff suffers from diabetes and renal failure.  Between April 2002 and August 2004, he was under the care of Medical Doctors J. Neubarth ("Neubarth") and R. S. Ortiz ("Ortiz") at PVSP, where J. Klarich ("Klarich") served as the Chief Medical Officer.  Ortiz was assigned as plaintiff's physician during that time and saw plaintiff during several medical appointments.  Ortiz and Klarich performed numerous kidney function tests on plaintiff.  Every test conducted on plaintiff while he was at PVSP reflected high (abnormal) levels of bodily waste in his system due to poor kidney function.  Neubarth noted that plaintiff has chronic renal failure, high blood pressure, and other medical complications caused by lack of kidney function.  On May 8, 2002, Ortiz noted that plaintiff was suffering from renal failure and prescribed Tylenol for lumbar pain.  On June 3, 2002, Ortiz noted that plaintiff is a "brittal diabetic" whose glucose levels are always high.  According to the American Diabetic Association, high glucose levels are a sign of complete renal failure.

On November 13, 2002, a consulting nephrologist at Mercy Hospital in Bakersfield determined that plaintiff only had 35% of normal kidney function and needed a kidney transplant or would suffer complete renal failure and require dialysis to survive.  At that time, plaintiff's biological brother, Kenny Burrows, roomed in a prison cell with plaintiff and was willing to donate a healthy kidney to plaintiff.

Plaintiff made several informal requests for a kidney transplant during his medical appointments with Ortiz, but Ortiz denied them.  On December 12, 2002, plaintiff filed an institutional appeal, requesting to be placed on the national organ list for a kidney transplant, and requesting to be cross-typed with a willing family member for kidney donation, reminding prison officials of his prior nephrology consultation.  On February 19, 2003, Klarich and Neubarth denied the appeal, based on recent test results which they said showed plaintiff's kidneys were "functioning adequately."  That same day, plaintiff fell into a diabetic coma induced by complete kidney failure and was checked into the Correctional Treatment Center by Neubarth for emergency care.

5

On July 10, 2003, Ortiz prescribed eye drop solution for plaintiff's eyes; blindness is an effect of renal failure.

Plaintiff filed another institutional appeal requesting a kidney transplant. On July 22, 2003 and August 28, 2003, Ortiz denied the appeal, stating that plaintiff would not qualify for a transplant unless he had only 15%-20% of normal kidney function and co-existent diseases.

Plaintiff lost the ability to walk and was confined to a wheelchair by Neubarth, due to immense swelling of his lower extremities and sores on his feet, from retention of fluids caused by renal failure. Plaintiff suffered repeated diabetic comas and respiratory failure during an emergency visit in which he underwent vascular surgery and had his esophagus accidentally punctured. Plaintiff was near death and had to be transferred to a hospital where he is now on dialysis. None of this would have happened if defendants had allowed plaintiff to have a kidney transplant.

Plaintiff requests as relief a court order for plaintiff to receive a kidney transplant from his biological brother, beginning with blood comparison tests.

**B.      Eighth Amendment Medical Care – Standard**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

A difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

**C.   Defendants' Motion**

Defendants maintain that plaintiff has not offered evidence proving that defendants knew of a substantial risk of serious harm to plaintiff, or that they deliberately disregarded such a risk.

Defendants argue that plaintiff only presents evidence that another doctor told plaintiff he needed a kidney transplant and defendants refused to allow it.  Defendants argue that this is merely a difference in medical opinion about treatment options, between a health-care provider and a patient, which does not give rise to an Eighth Amendment claim.  Defendants argue that plaintiff is not qualified to give a medical opinion because he is not a doctor and has not had any medical training and therefore, plaintiff's contention that defendants disregarded a serious and known risk is merely speculative because plaintiff lacks any insight into defendants' subjective state of mind and knowledge.  Defendants argue that even assuming they were negligent in their treatment of plaintiff, this does not rise to the level of deliberate indifference required in a § 1983 action.  Defendants also maintain that plaintiff has not offered any admissible evidence showing that the lack of a kidney transplant caused him further injury.  In support of their motion, defendants offer their declarations.

The undisputed facts show that plaintiff is presently suffering from hypertension, diabetes, and poor kidney function.  (Undisputed Fact ("UF") No. 1.)  It is undisputed that on June 13, 2003, Neubarth examined plaintiff, and plaintiff explained that he had a nephrology consultation in November 2002, was told his kidneys were functioning at 35% of normal, and that he would need dialysis within one year, and that Neubarth prescribed insulin, ordered lab tests, and requested an ophthalmology consult.  (UF No. 4.)  Based on the lab reports, Neubarth determined that plaintiff's kidneys were functioning adequately, so plaintiff did not receive dialysis treatment and was not recommended for such treatment.  (UF No. 5.)  After denial at the first level of review, on July 22, 2003, Ortiz again denied plaintiff's ongoing appeal request to be put on the National Organ Donor List, and "cross type" with a willing family donor based on his review of plaintiff's medical history.  (UF No. 7.)

Neubarth declares that it is his medical opinion, based on plaintiff's lab reports from January 13, 2003, that plaintiff's kidneys were functioning adequately, plaintiff did not need dialysis at that time, and plaintiff was receiving appropriate care for his renal condition as well as his other medical needs.  (Decl. of Neubarth ¶6.)  Neubarth denied plaintiff's request for a kidney transplant in February 2003 because plaintiff's latest tests indicated his kidneys were functioning

1  adequately, and plaintiff did not meet the criteria for a kidney transplant at that time. (Id. ¶7.) It
2  was Neubarth's medical opinion that plaintiff's kidney function was not low enough to justify the
3  risk of a kidney transplant. (Id. ¶8.) A kidney transplant, unless from an identical twin, would
4  require the patient to take medications to prevent rejection of the kidney. Id. The drugs have a
5  dangerous effect, and the risk of the drugs outweighed the need for a transplant at that time. Id.
6  Although plaintiff alleges he was confined to a wheelchair and suffered repeated diabetic comas
7  due to this kidney function, diabetic comas are not closely related to poor kidney function. (Id.
8  ¶9.) Plaintiff suffers from diabetes, hypertension, and poor kidney function and may experience
9  problems with his eye sight, swollen limbs, and low sugar levels as a result of these health
10 conditions, or due to failure to take his medications. Id. On November 13, 2003, when plaintiff
11 was admitted to Mercy Hospital for pneumonia, his respiratory failure was due to the pneumonia
12 and indirectly to his renal condition. Id. Neubarth declares that he has never knowingly or
13 intentionally denied plaintiff adequate medical care or knowingly or intentionally disregarded any
14 risk of harm, injury or undue pain or suffering to plaintiff. (Id. ¶¶12, 13.)

15 Ortiz declared that, based on the lab reports, plaintiff's kidneys were functioning
16 adequately. (Decl. of Ortiz ¶2.) It was Ortiz' medical opinion that plaintiff was not in need of a
17 kidney transplant. Id. Kidney transplants are not considered unless dialysis does not work. Id.
18 On July 22, 2003, Ortiz denied plaintiff's request to be put on the organ donor list and cross-type
19 with willing family, based on Ortiz' review of plaintiff's medical history and the fact that
20 plaintiff's brother was disqualified as an organ donor. (Id. ¶7.) Ortiz concurred with Neubarth's
21 opinion that plaintiff's symptoms may result from his health conditions or failure to take his
22 insulin medication. (Id. ¶8.) Diabetes is a disease that can affect multiple organs. Id. In Ortiz'
23 professional opinion, plaintiff received all reasonable and necessary care consistent within
24 community standards, and consistent with the degree of knowledge and skill ordinarily possessed
25 and exercised by members of his profession under similar circumstances. (Id. ¶9.) Ortiz
26 declared that he has never knowingly or intentionally denied plaintiff adequate medical care, and
27 his treatment of plaintiff was proper. (Id. ¶10.) Ortiz declared that he has never knowingly or
28 ///

intentionally sought to deny plaintiff access to his requests for medical treatment or disregarded any risk of harm, injury or undue pain or suffering to plaintiff. (Id. ¶11.)

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

As previously set forth, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). In order to meet his burden, plaintiff must set forth evidence that supports the claim that defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer, 511 U.S. at 837. Further, in situations involving an alleged delay in receiving treatment, the delay must have caused further harm, McGuckin, 974 F.2d at 1060 (internal citation omitted), and plaintiff's disagreement with the treatment rendered, without a showing of deliberate indifference, is insufficient to give rise to a claim for relief. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).

**D.     Plaintiff's Opposition**

Plaintiff's opposition is based on the evidence in his verified second amended complaint and its accompanying exhibits. (Pltf's Opp, Doc. 55.) Although the documents which plaintiff submits as evidence are not authenticated, the defect is easily curable and the court can discern no good faith basis for an argument that the documents are not true and correct copies of plaintiff's prison medical records and prison appeals. For this reason, the court will consider plaintiff's records as evidence to the extent cited to by plaintiff in his opposition. However,

///

plaintiff is not competent to interpret the meaning of medical records, and his layman's interpretation cannot be accepted.

Plaintiff argues that this is not a case of differing medical opinions, but a demonstration of defendants' inaction which rises to the level of deliberate indifference. (Cmp at 6:24-27.) Plaintiff claims that defendants were deliberately indifferent when they denied plaintiff a kidney transplant, because they knew that by doing so "the plaintiff would fall extremely ill or die slowly." (Cmp at 8:13-17; 12:13-16.) Plaintiff states that he was treated by both defendants from April 2002 until August 2004. (Cmp at 8:18-20; 12:17-18.) Plaintiff submits medical records as evidence that he saw Ortiz several times from May 2002 until December 2003, and that Ortiz performed numerous kidney function tests on plaintiff. (Cmp at 12:19-21; Exh D.) Plaintiff submits a medical record as evidence that Neubarth documented plaintiff's medical progress on January 13, 2003. (Exh to Cmp at 35.) Plaintiff submits copies of prison appeals dated February 19, 2003 and August 15, 2003 showing that both defendants denied plaintiff's prison appeal requesting a kidney transplant. (Exh to Cmp at 19-22, 24.) The copy of the February 19, 2003 appeal reflects the undisputed fact that on January 15, 2003 plaintiff was interviewed by Neubarth, who knew that an outside doctor had determined that plaintiff only had 35% of normal kidney function and would suffer renal failure and require dialysis within a year. (Exh to Cmp at 22; UF No. 4.)

Even if defendants knew that plaintiff's condition was grave, something further is needed to demonstrate that they possessed the requisite state of mind, thereby raising a triable issue of fact regarding whether either defendant acted with deliberate indifference. Plaintiff has not presented any evidence that the decision to deny plaintiff a kidney transplant was based on anything except defendants' medical opinions and their intention to provide plaintiff with adequate medical care. Therefore, defendants Neubarth and Ortiz are entitled to judgment as a matter of law.

///

///

## V. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court finds that plaintiff has not submitted admissible evidence raising any triable issues of fact, and defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment medical care claims.

Accordingly, the court HEREBY RECOMMENDS that:

1. Defendants' motion for summary judgment, filed May 12, 2008, be GRANTED, thus concluding this action in its entirety; and

2. The Clerk be DIRECTED to enter judgment for defendants and close this case.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 23, 2009**             /s/ **Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE